59 CCPA

**In re Application of Robert R. ERNST.**
**Patent Appeal No. 8599.**

United States Court of Customs and Patent Appeals.

Dec. 30, 1971.

As Modified on Rehearing March 2, 1972.

John R. Schovee, Schovee & Boston, Rochester, N. Y., attorneys of record, for appellant.

S. Wm Cochran, Washington, D. C., for the Commissioner of Patents. Fred E. McKelvey, Washington, D. C., of counsel.

Before RICH, ALMOND, BALDWIN and LANE, Judges, and RAO, Judge, United States Customs Court, sitting by designation.

ALMOND, Judge.

This is an appeal from the decision of the Patent Office Board of Appeals affirming the rejection of claims 1–2, 4–5, and 23–29 of appellant's application entitled "Method and Apparatus for Sterilizing." [1] No claims have been allowed.

The invention relates to a method of sterilizing materials by treatment with a gaseous chemical sterilizing agent, for example, ethylene oxide gaseous mixtures. The basic steps of appellant's process are set forth in claim 1:

> 1. A method of sterilizing an article in an enclosed chamber comprising the steps of:
>
> (a) stratifying air in said chamber by introducing into said chamber in a gaseous state a volume of a chemical sterilizing gas having a higher vapor density than air sufficient to stratify said air in said chamber, and
>
> (b) upwardly displacing said stratified air by introduction of suffi-

---

1. Serial No. 396,292 filed September 14, 1964.

cient volume of said gas to submerge said article in said gas,

(c) maintaining said gas in said chamber for a sufficient period to effect sterilization of the article.

Appellant also discloses that the "displacement of air by the sterilizing gas may be preceded by a pre-humidification step * * * to establish a preselected humidity level in the goods to be sterilized," or by "a pre-vacuum step * * * to minimize air molecules in the goods to be sterilized thereby greatly facilitating penetration of moisture and sterilizing gas into the goods," or by both preliminary steps.

Independent claims 2, 4–5, and 23 are similar to claim 1 except that they incorporate additional limitations further defining the sterilizing gas. Dependent claims 24–29 call for either pre-evacuating the chamber, or pre-humidifying the air in the chamber.

The references relied upon are:

| Griffith et al. | | |
|---|---|---|
| (Griffith) | 2,189,949 | February 13, 1940 |
| McDonald | 3,068,064 | December 11, 1962 |

Griffith discloses a method of sterilizing colloid materials with ethylene oxide gas. The procedure Griffith discloses as preferred involves quick preliminary evacuation merely to remove air from the sterilizing chamber so that it may be replaced by ethylene oxide, admission of ethylene oxide gas to atmospheric pressure, and exposure to the gas for three hours. Concerning the use of vacuum to evacuate the chamber, Griffith states:

In the said process of using vacuum first hereinabove described, the time period of exposure to vacuum is only sufficient to effect the vacuum to remove air, for drawing in ethylene oxide without dilution by air or loss of ethylene oxide, as would occur in simply displacing air by ethylene oxide.

McDonald discloses both pre-evacuation and pre-humidification prior to treatment of articles with a sterilizing gas.

The examiner rejected claims 1–2, 4–5, and 23 under 35 U.S.C. § 103 as unpatentable over Griffith. Claims 24–29 were rejected under 35 U.S.C. § 103 as unpatentable over McDonald in view of Griffith. The examiner reasoned that it would have been obvious to one of ordinary skill in the art "to substitute one well-known air removal step for another in the McDonald system when Griffith recognizes that both the vacuum and the displacement method are adaptable when using ethylene oxide."

Appellant does not contend that it would not have been obvious to perform various additional steps, such as pre-humidification and pre-evacuation, in the displacement process mentioned by Griffith. It is appellant's position that the disclosure in Griffith of "simply displacing air by ethylene oxide" does not teach one of ordinary skill in the art the "stratifying" and "upwardly displacing" claimed. Rather, appellant submits that the "displacing" mentioned in Griffith refers to a process of mixing and diluting the ethylene oxide with the air in the sterilizing vessel and drawing off this mixture until only pure ethylene oxide remains. Appellant submitted three affidavits in support of this interpretation of the Griffith disclosure.

The board, in expressing disagreement with appellant's view, stated:

* * * [Griffith] unequivocally discloses that in a sterilizing chamber the air could be simply displaced by ethylene oxide. Since this gas is heavier than air, as it is introduced into the sterilizing chamber it would necessarily stratify and displace air at the bottom of the chamber. As more ethylene oxide is introduced, the stratified air would be displaced more and more upwardly. Since the gas is introduced for the purpose of sterilizing an article, it is clear that it would be obvious to continue displacing the air by the ethylene oxide until the article to be sterilized is submerged in said gas and then maintaining it in the chamber long enough to effect sterilization of the article. We, there-

fore, consider Appellant's claimed process of sterilizing would be obvious to those skilled in the art.

Appellant's affidavits do not agree with this interpretation of the reference but appear to be of the opinion that the reference means there has been some mixing of the air with sterilizing gas. However, in the broad process as claimed, this could also happen since the location of the introduction of the sterilizing gas into the chamber is omitted from the claims.

From the foregoing, it can be seen that the dispute here involves the meaning of "displacing," as used in the Griffith reference, and of "stratifying," as used in appellant's claims. Appellant has cited dictionary definitions and submitted affidavits to show that "displacing" means mixing, diluting, and replacing, whereas "stratifying" means upwardly displacing. The solicitor has cited dictionary definitions and parts of the disclosures in the references as well as parts of appellant's own disclosure in support of the board's finding that the terms "displacing" and "stratifying" both connote pushing the air up and out while replacing it with ethylene oxide.

We think that whichever definitions of "displacing" and "stratifying" are accepted, there are no unobvious differences between the "displacing" of Griffith and the "stratifying" claimed. That is, if appellant's interpretation of "displacing" as meaning mixing and replacing is accepted, then we agree with the board that appellant's claimed process does not distinguish over this type of "displacing." Appellant discloses that "because of the greater vapor density of the gas, displacement could in a less effective manner be accomplished by introducing the gas at the top or any selected position in the chamber." As the board noted, the claims are broad enough to read upon introducing the sterilizing gas in such a manner, and such a process could result in some mixing and diluting prior to replacing. Appellant has not satisfactorily explained why his claimed

process would not also in such instances result in the same type of mixing and diluting he asserts Griffith would get.

Likewise, if appellant's "stratifying" is accomplished without any mixing and diluting, then we agree with the Patent Office that the "displacing" of Griffith would also result in the mere upward displacement of the air in the chamber. Both appellant and Griffith are using ethylene oxide, which is heavier than air, to replace the air in the chamber. If the ethylene oxide because of its density causes the upward displacement of air in appellant's process, we do not see why it would not also cause such upward displacement in the "displacing" mentioned by Griffith. The fact that the introduction of ethylene oxide will necessarily stratify is established by appellant's own disclosure that "[t]he vapor density of ethylene oxide * * * being substantially higher or greater than air will conveniently stratify when introduced into a chamber" and that ethylene oxide "readily stratifies and does not disperse into the air."

Summarizing, we agree with the Patent Office that if the ethylene oxide of Griffith is mixed and diluted with the air in the chamber, then there is no reason to expect that appellant's sterilizing gas won't also be mixed and diluted. Likewise, if the sterilizing gas of appellant readily stratifies, then there is no reason to expect that Griffith's sterilizing gas won't also stratify.

At oral argument appellant alleged that claims 2, 4–5, 23, and 27–29 further distinguish over the prior art since they call for (in varying degrees of specificity) sterilizing gas mixtures, including ethylene oxide mixtures and fluorocarbon mixtures. After reviewing the record on appeal, we cannot find any indication that appellant argued before the board that there was any patentable significance to that feature, nor was such an argument presented in appellant's brief. As we said in In re Touvay, 435 F.2d 1342, 1344, 58 CCPA 809, 811 (1971), "Ordinarily we do not consider arguments directed to the significance

of a particular limitation at this late stage unless they were raised below." We see no reason to deviate from that rule here.

Appellant contends that "factors of commercial success, long felt need, and failure of others, all which are present here, are indicia of non-obviousness" sufficient to overcome any prima facie case of obviousness which may be said to exist here. Only one of the affidavits submitted by appellant sets forth any evidence of commercial success, and we find that evidence to be unconvincing. At best, it indicates that industrial sterilizers which perform the claimed process have sold well. As the solicitor points out, this evidence does not relate directly to the claimed process since the alleged commercial success might well be due to unrelated desirable features of the apparatus.

The decision of the board is affirmed.

Affirmed.